UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEYA S.,[1] | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:18-cv-2389-WTL-DML |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

# ENTRY ON JUDICIAL REVIEW

Plaintiff Leya S. requests judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court rules as follows.

## I. PROCEDURAL HISTORY

The Plaintiff filed her applications for SSI and DIB on October 20, 2014, alleging an onset of disability on September 10, 2014. The Social Security Administration ("SSA") initially denied the Plaintiff's applications on February 13, 2015. After she timely requested reconsideration, SSA again denied her claim on July 24, 2015. Thereafter, the Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on May 16, 2017, at which the Plaintiff, represented by counsel, and a vocational expert ("VE") testified.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

The ALJ issued a decision denying the Plaintiff's applications on December 13, 2017. After the Appeals Council upheld the decision on June 14, 2018, the Plaintiff filed this action seeking judicial review.

## II. EVIDENCE OF RECORD

The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-

---

[2]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony presented," she must "provide an accurate and logical bridge between the evidence and her conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## IV. **THE ALJ'S DECISION**

The ALJ found at step one that the Plaintiff had not engaged in substantial gainful activity since September 10, 2014, the alleged onset date. At step two, the ALJ determined that the Plaintiff had "the following severe impairments: pseudotumor cerebri with benign intracranial hypertension, chronic headache, thoracic spine syrinx/syringomyelia with history of low back pain, degenerative disc disease of the cervical spine, obesity, vision impairment, focal cartilaginous defect of the knees bilaterally, history of seizure vs. syncope, depression, dysthymic disorder, anxiety with panic attack, obsessive compulsive disorder, and panic disorder without agoraphobia." R. at 18 (citation omitted). The ALJ found at step three that the

impairments, or combination of impairments, did not meet or equal the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except lift, push, pull, and carry ten pounds occasionally and five pounds frequently; sit, stand, and walk each six hours of an eight-hour workday; never climb ladders, ropes, and scaffolding; occasionally balance, kneel, crouch, and climb stairs and ramps; only occasionally stoop but no stooping below the waist; never crawl; no exposure to unprotected heights or dangerous machinery; limited to simple and routine work; limited to work that allows the individual to be off task five percent of the workday in addition to regularly scheduled breaks; and limited to work that requires no greater than frequent depth perception.

R. at 17. At step four, the ALJ found that the Plaintiff was unable to perform her past relevant work as a CNA. At step five, the ALJ found, based on VE testimony and considering the Plaintiff's age, education, work experience, and RFC, that there were jobs that existed in significant numbers in the national economy that she could perform, including addresser, mail clerk, and charge account clerk. Accordingly, the ALJ concluded that the Plaintiff was not disabled.

## V. **DISCUSSION**

The Plaintiff argues that the ALJ failed to give an adequate reason for rejecting the Plaintiff's allegation that she suffers from disabling headaches and associated symptoms. Pursuant to SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." *Id*. The ruling specifies that the SSA uses "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms," but continues to utilize the regulatory factors relevant to a claimant's symptoms, including daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any

4

medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. SSR 16-3p; 20 C.F.R. § 404.1529(c)(3). The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). The ALJ's subjective symptom assessment may be disturbed by this Court only if it was patently wrong. For the reasons set forth below, the Court so finds in this case.

The Plaintiff testified that she has headaches three times a week in the back right lower lobe of her head that feel like she has been hit in the back of the head with a baseball bat. The headaches are sometimes accompanied by vomiting and/or dizziness and last a half a day or longer. She can tell when a headache is going to happen, as she gets a burning in the back of her right lower neck and an achy dullness, so she tries to lie down or take a cold shower to help prevent the headache from developing. About six times a month she has a headache that is so severe that it disrupts her functioning for an entire day.

There is little question that if this testimony were credited, a finding of disability would be required. The ALJ, however, found that "while the claimant's alleged headaches are supported by the medical records, the severity of her symptoms and the alleged functional limitations are not generally consistent with the evidence," Dkt. No. 7-2 at 20, and that "the claimant's allegations of disabling subjective symptoms are not consistent with the objective medical evidence." *Id.* at 22.

In support of this finding, the ALJ points to the fact that in a record dated January 3, 2017, from a caseworker the Plaintiff saw in conjunction with domestic violence she

experienced, the caseworker noted that the Plaintiff "is not able to work until the doctor clears the tumor in her head." Dkt. No. 7-9 at 24. The ALJ then states "Unfortunately, there is no evidence that would support this statement. There is no record the claimant was advised not to work by a physician pending treatment of her pseudo tumor, or that she was limited in her work activities, by a provider, due to such." Dkt. No. 7-2 at 20. However, the record cited to by the ALJ is simply the caseworker's summary of what the Plaintiff had told her, and it does not, in fact, say that the Plaintiff claimed that a physician had advised her not to work, but rather that the Plaintiff told the caseworker that she "is not able to work." That is no surprise; the Plaintiff has claimed that she is unable to work due to the headaches she suffers—which are caused by her pseudo tumor—since September 2014. Thus, the ALJ's implicit reliance on this statement as an indication of the Plaintiff's lack of candor is troubling.

The ALJ next notes that after the Plaintiff's November 2015 evaluation by a neurologist, there is "little documentation that the claimant sought treatment for her headaches," and that the Plaintiff failed to follow recommendations that she undergo an EEG and a course of physical therapy. *Id.* However, the ALJ fails to acknowledge the Plaintiff's testimony at the hearing that she lacked insurance for much of the relevant time period following that appointment and to consider whether that was the reason she did not follow those recommendations. *See Schloesser v. Berryhill*, 870 F.3d 712, 720 (7th Cir. 2017) ("Inability to afford treatment is one reason that may provide insight into the claimant's credibility, and failure to consider a claimant's reasons for not seeking treatment is erroneous.") (citations and internal quotation marks omitted).

The ALJ also notes that "the claimant testified that lifting, standing, walking, and sitting aggravated her headaches, and musculoskeletal pain. In the record, she reported that even 'slight' activity exacerbated her headaches, though this is not supported by the evidentiary record as a whole (Ex. B8F at 13), which demonstrated her ability to engage in travel, (Ex. B9F at 67)

6

and swim (Id. at 61) without reports of headache exacerbation." Dkt. No. 7-2 at 22. This statement simply is not supported by the record. The report cited by the ALJ states: "At times, the pain is so severe that she is unable to stand up. Even the slightest activity exacerbates her pain." Dkt. No. 7-8 at 13. In context, it appears that the Plaintiff reported to her physician that during the times in which she is experiencing a severe headache, even the slightest activity can exacerbate it. This is entirely consistent with her testimony, in which she stated that walking more than thirty minutes or lifting more than 5-10 pounds can cause her to have a headache, and that when she feels a headache coming on she will lie down or take a cold shower to try to stave it off. Neither the Plaintiff's testimony nor the report cited by the ALJ can reasonably be interpreted as the Plaintiff making the inconsistent claim that the slightest activity causes her to have a severe headache.

Even more troubling is the evidence relied on by the ALJ for her conclusion that the Plaintiff could engage in travel and swim "without reports of headache exacerbation." The exhibit in question consists of notes from a therapist who was providing in-home counseling services to the Plaintiff. The page cited for demonstrating the Plaintiff's "ability to engage in travel," contains the following notes: "[Plaintiff's mother] informed me that [Plaintiff is] in Nashville for preliminary court hearing." In context, then, it is clear that the "traveling" the Plaintiff engaged in was going to a nearby county for a court hearing relating to an assault she suffered. The ALJ's implication is that the Plaintiff would not have chosen to "engage in travel" if activity actually caused her to suffer disabling headache pain, but, of course, going to a court hearing is far different from voluntary leisure travel, and there is no evidence that the trip in question did not exacerbate the Plaintiff's headaches. The page cited with regard to swimming notes: "I asked [the Plaintiff] about her self-care routine and she said she may go swimming with friends later this week." There is no information about whether the Plaintiff actually went

7

swimming, nor is there any information about what level of activity the swimming outing might have entailed. The Court can envision many ways the Plaintiff could have "gone swimming" with friends that would have involved minimal activity; in other words, the ALJ improperly assumed that the outing in question—assuming it took place—involved the type of activity that the Plaintiff testified would bring on a headache.

The ALJ took isolated statements by others in the record out of context and used them to determine that the Plaintiff's testimony regarding the nature and extent of her headaches was inconsistent with the record as a whole. This was error. Accordingly, remand is required for a reassessment of the Plaintiff's subjective symptoms.

The Plaintiff also argues that the ALJ failed properly to account for her mental limitations in the hypothetical questions she posed to the vocational expert. Specifically, the ALJ found that the Plaintiff had moderate limitations in "concentrating, persistence, or maintaining pace," Dkt. No. 7-2 at 17, and purportedly accounted for those limitations by limiting her to "simple and routine work" and "work that allows [her] to be off task five percent of the workday in addition to regularly scheduled breaks." Dkt. No. 7-2 at 23. As the Plaintiff correctly notes, the Seventh Circuit has rejected the notion that including a limitation of "simple, routine, and repetitive tasks" in a hypothetical equates to informing a vocational expert that an individual has "moderate difficulties in concentration, persistence, or pace," noting that

> [t]hese terms refer to "unskilled work," which the regulations define as work that can be learned by demonstration in less than 30 days. *See* 20 C.F.R. §§ 404.1568, 404.1520. We have explained that the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work.

*Lanigan v. Berryhill*, 865 F.3d 558, 565-66 (7th Cir. 2017) (citations omitted). And while the limitation to jobs that will allow the Plaintiff to be off task five percent of the time, in addition to normal breaks, could account for difficulty in concentration, the ALJ did not explain how she

arrived at that figure. *See id.* (ALJ must "build an accurate and logical bridge" between evidence of difficulties in concentration and allowed time off task in hypothetical). On remand, the ALJ shall remedy these errors.

Finally, the Plaintiff argues that the ALJ failed to adequately explain why she gave the opinion of consultative examiner Dr. Wang only partial weight. On remand, the ALJ shall explain why she rejected Dr. Wang's determination that the Plaintiff could sit for thirty minutes at a time for a total of five hours in an eight hour workday, stand for five minutes at a time for a total of one hour in an eight hour workday, and walk for five minutes at a time for a total of one hour in an eight hour workday.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED and this case is REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 6/27/2019

*[signature]*

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication